***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission adopts the Opinion and Award of Deputy Commissioner Rowell with modification to the Average Weekly Wage and related award amounts.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as: *Page 2 
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act;
2. Defendant-employer regularly employed three or more employees at all relevant times;
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties;
4. On January 4, 2005, an employment relationship existed between plaintiff and defendant-employer.
5. On January 4, 2005, plaintiff sustained a compensable injury by accident arising out of and within the scope of her employment with defendant-employer; and
6. Plaintiff's scarring and permanent partial disability assigned to the left hand are attributable to the compensable injury of January 4, 2005.
7. The issues to be determined are as follows:
 a. What benefits is plaintiff entitled to receive under the Act for:
 i. Temporary total disability;
 ii. Permanent partial disability benefits, pursuant to N.C. Gen. Stat. § 97-31
 iii. Scarring;
 iv. Medical Compensation, including a second opinion of her rating, scar revision, other medical care as may be determined and Spanish interpretation;
 v. Attorney's Fees *Page 3 
 b. What is plaintiff's average weekly wage?
8. The parties stipulated into evidence as Exhibit 1 the following documents:
Plaintiff's medical records and bills, Industrial Commission Forms, Witness Statements, Discovery Responses of Defendant Pilgrim's Pride, Correspondence between Plaintiff's and Defendant's counsel and plaintiff's Personnel File.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On January 4, 2005, plaintiff was a 20-year-old female, having been born August 20, 1984, and was employed by defendant-employer as a production clerk in the breast portioning department. Plaintiff's job consisted of placing chickens and parts of chickens into a motorized cutting machine, which cut the chicken into smaller pieces.
2. Plaintiff testified that she worked approximately seven hours per day, five days per week and was paid $8.40 per hour. Plaintiff testified that her average weekly wage was approximately $280.00 per week. Plaintiff's payroll records, which are a part of the stipulated exhibits and entitled Annual Pay History Report, support plaintiff's testimony and support an average weekly wage of at least $300.37 per week. Plaintiff's testimony regarding her average weekly wage was not questioned by defendants on cross-examination and no one testified on behalf of defendants to dispute plaintiff's testimony. The Form 22, which defendants have provided, does not reconcile with plaintiff's Annual Pay History Report. The undersigned accept as credible the testimony by plaintiff as to her average weekly wage. *Page 4 
3. On or about January 4, 2005, plaintiff sustained an injury to her left hand while working for defendant-employer, specifically when her hand became caught in the cutting machine with which she was working. Plaintiff testified that her supervisor modified the cutting machine by removing a protective device designed to prevent the operator's hand from entering the machine and being cut. Plaintiff testified the accident occurred when an individual called her name. Plaintiff thought the person might have been her supervisor so she turned to answer the person and her hand accidentally entered the cutting machine. Plaintiff testified her hand would not have entered the machine if the protective device had not been removed from the cutting machine.
4. Plaintiff received an extensive degloving injury to her left hand with nerve and tendon damage and underwent surgery. As a result of the injury of January 4, 2005, plaintiff suffers from scarring and reduced range of motion in her hand. She testified that the scar makes it difficult for her to grab things.
5. Plaintiff testified she missed 11 days from work as a result of her injury and was not paid for this missed time. Plaintiff's medical record dated January 4, 2005 indicates plaintiff shall not use her left hand because of left hand surgery. The box on the January 4, 2005 medical record which would indicate plaintiff could return to work is not checked. The medical record dated January 20, 2005, indicates plaintiff may return to work on January 20, 2005 with the restriction of no use of left upper extremity. The box on said record which indicates plaintiff could return to work is checked. Despite defendants' contention that plaintiff did not miss time from work or that said absence was not at the direction of a doctor, defendants' own Form 28 indicates plaintiff's disability began on January 5, 2005 and further indicates plaintiff returned to work on January 16, 2005. Defendants' Form 60 also indicates that plaintiff was disabled during *Page 5 
this time period. Plaintiff's testimony regarding her days missed is credible and consistent with the evidence. Defendants' contentions on this issue are unreasonable and indicative of unfounded stubborn litigiousness.
6. On March 2, 2006, Doctor Alan Ward, plaintiff's treating orthopedic doctor indicated plaintiff had reached maximum medical improvement and opined that plaintiff's injury resulted in a ten percent permanent partial impairment of the left hand and that her scarring was likely to be permanent.
7. On May 4, 2006, plaintiff obtained a second opinion of her disability from Maher F. Habashi, M.D. who is an orthopedic and hand surgeon. Dr. Habashi opined plaintiff suffered a 20% permanent partial disability to the left hand and estimated the cost of scar revision surgery at $15,000.00.
8. Defendants accepted the compensability of plaintiff's injury by filing a Form 60 on February 2, 2005. The parties agreed to conduct a mediation to settle plaintiff's claim and a mediation was held on or about October 12, 2006. As documented by stipulated letters from plaintiff's counsel to defense counsel following mediation, plaintiff and plaintiff's counsel had traveled to the mediation and upon arrival, it was determined that defense counsel had no authority to settle the case because no one had reviewed the file on behalf of defendants. However, plaintiff's counsel and defense counsel agreed to attempt to resolve the matter on a Form 21 within a short time after the mediation.
9. After the mediation, plaintiff's counsel sent a letter to defense counsel on October 16, 2006, requesting that the plaintiff's benefits be paid on a Form 21. In his letter, plaintiff's counsel advised he would file a Form 33 if he did not receive a response. *Page 6 
10. On November 1, 2006, after not receiving a response from defendants, plaintiff's counsel filed a Form 33 and advised defense counsel that he was requesting that defendants agree to the average weekly wage which was consistent with the payroll reports defendants had previously produced. It is apparent from the correspondence that the only outstanding issue was plaintiff's average weekly wage.
11. On November 7, 2006, plaintiff's counsel again wrote to defense counsel noting that defendants' Form 33R states that the defendants agreed that plaintiff is entitled to compensation for any permanent partial impairment rating. Plaintiff's counsel then requested that defendants agree on a compensation rate by agreeing to use their own figures. The purpose of plaintiff's November 7, 2006 letter was to document these facts for future hearings. The only response to plaintiff's letters of October 16, 2006, November 1, 2006, and November 16, 2006 was defense counsel's cover letter to Linda Langdon, I.C. Dockets Director, enclosing defendants' aforementioned Form 33R.
12. Defendants' prolonged delay in paying plaintiff's compensation which defendants admitted was owed to plaintiff is inexplicable and unreasonable.
13. Defendants' prolonged delay of this clearly compensable claim is unreasonable and is indicative of unfounded, stubborn litigiousness.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On or about January 4, 2005, plaintiff sustained a compensable injury arising out of and within the course of her employment with defendant-employer, resulting in injury to her left hand. N.C. Gen. Stat. § 97-2(6). *Page 7 
2. As a result of plaintiff's compensable injuries, she required medical treatment and is entitled to payment of all such medical treatment. All medical treatment provided as a result of plaintiff's January 4, 2005 accident was provided to effect a cure, provide relief, or lessen plaintiff's period of disability, and defendants shall pay all outstanding medical bills in accordance with the North Carolina Industrial Commission's fee schedule. N.C. Gen. Stat. §§ 97-2(19); 97-25.
3. In the event that any group benefit plan, including Medicaid, has paid any medical bills related to this claim on behalf of plaintiff, defendants shall indemnify plaintiff of any health insurance liens. N.C. Gen. Stat. § 97-90.1.
4. Plaintiff is entitled to medical treatment necessitated by her compensable injury by accident, to include surgery and additional medical treatment, and any other treatment as is recommended by plaintiff's treating physician, Dr. Ward. N.C. Gen. Stat. §§ 97-2(19); 97-25.
5. As plaintiff's employment prior to her injury extended for a period of fewer than 52 weeks, methods one and two of determining plaintiff's average weekly wage are not appropriate, therefore, the Full Commission finds that the use of method three is fair and just to all parties pursuant to N.C. Gen. Stat. § 97-2(5). Prior to her injury, plaintiff worked 11.6 weeks earning a total of $3,484.32 during the 11.6 weeks. When determining plaintiff's average weekly wage by dividing her total earnings by the number of weeks and parts thereof, plaintiff's average weekly wage is $300.37 yielding a worker's compensation rate of $200.26.
6. As a result of plaintiff's compensable injury, she was unable to work from January 5, 2005 until January 16, 2005 and is entitled to temporary total disability benefits at a compensation rate of $200.26 per week. Therefore, plaintiff missed 11 days from work and was not compensated. Defendants are entitled to a grace period of seven days. Therefore, plaintiff is *Page 8 
entitled to be compensated for four (4) days which is $114.43 in total compensation. N.C. Gen. Stat. § 97-28.
7. Plaintiff received a disability rating of ten percent from Dr. Ward who is the treating physician. Plaintiff obtained a second opinion of her disability rating from Dr. Maher Habashi who is a board certified orthopedic surgeon with a specialty in hand surgery and Dr. Habashi opined that plaintiff's disability is 20% to her hand. The Full Commission in its discretion averages the two ratings and determines that plaintiff's permanent partial disability is 15%; therefore plaintiff is entitled to receive proper and equitable compensation in an amount of $6,007.80 for the serious and permanent injury to her left hand. N.C. Gen. Stat. § 97-31(12).
8. Defense of this claim by defendants was unreasonable. Plaintiff is entitled to have defendants pay her attorneys' fees. N.C. Gen. Stat. § 97-88.1.
9. Defendants' unreasonable defense of this claim has delayed compensation which was clearly owed to plaintiff. N.C. Gen. Stat. § 97-18.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at a compensation rate of $200.26 for the four days from January 5, 2005 continuing through January 16, 2005, excluding the seven-day waiting period, as a result of her compensable injuries. $114.43 of said benefits have already accrued, and shall be payable in a lump sum. *Page 9 
2. Such compensation as is presently owed and due to plaintiff under paragraph 1 of this Award shall be paid in a lump sum without commutation, and is subject to a ten percent (10%) penalty imposed pursuant to N.C. Gen. Stat. § 97-18(g).
3. Defendants shall pay to plaintiff her permanent partial disability rating of fifteen percent (15%) to her left hand at a rate of $200.26 per week for a thirty (30) week period. This amount is due and payable and shall be paid in a lump sum.
4. A reasonable attorney fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph 1, 2, 3, of this award is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent (25%) of the lump sum due plaintiff under paragraph 1, 2, and 3, of this Award which has accrued to date shall be paid directly to plaintiff's counsel and shall not be deducted from the compensation due plaintiff, but shall be assessed and paid by defendants as part of the cost of this action. N.C. Gen. Stat. § 97-88.1.
5. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injuries for as long as such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief, or tend to lessen the period of disability, when bills for the same have been approved in accordance with the provisions of the Workers' Compensation Act.
6. Defendants shall pay all costs.
This the 9th day of October, 2008.
S/___________________ BUCK LATTIMORE COMMISSIONER *Page 10 
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ PAMELA T. YOUNG CHAIR *Page 1